IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE G. DIAZ,<br><br>      Petitioner,<br><br>vs.<br><br>DEAN BORDERS, Warden, California Institution for Men,[1]<br><br>      Respondent. | No. 2:12-cv-02616-JKS<br><br>MEMORANDUM DECISION |

   Jose G. Diaz, a California state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Diaz is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at the California Institution for Men in Chino, California. Respondent has answered, and Diaz has not replied. Also before the Court is Diaz's motion to stay the federal proceedings. Respondent opposes the stay request, and Diaz has replied in support.

## I. BACKGROUND/PRIOR PROCEEDINGS

   On September 11, 2008, Diaz was charged with one count of continuous sexual abuse of a child under 14 years (Count 1) and ten counts of lewd and lascivious conduct (Counts 2 through 11) in connection with offenses committed upon his stepdaughter. Diaz did not contest the sexual abuse at trial and did not challenge the charges alleged in Counts 2 through 11, which were alleged to have occurred after the victim turned 14. The sole issue at trial was whether the victim was 13 years old for the 3 acts of abuse, each separated by at least 1 month, required by

---

   [1]  Dean Borders is substituted for Tim Perez as Warden, California Institution for Men. FED. R. CIV. P. 25(d).

statute for conviction on Count 1.[2] The jury convicted him of all counts based upon the testimony of the victim and Kim Mack, a marriage and family therapist to whom Diaz confessed to the abuse. After trial, Diaz moved for a new trial, supported by a sworn declaration from the victim stating that she had been mistaken when she claimed at trial that she was "very sure" she was 13 when the abuse began, and now believed she was actually 14 at the time. The court denied the motion and, on the same day, sentenced Diaz to an imprisonment term of 18 years and 8 months.

Through counsel, Diaz appealed his conviction. He challenged only his conviction on Count 1, on the grounds that the trial court abused its discretion when it denied his motion for a new trial on that count based upon new evidence—the victim's partial recantation. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying this case and the evidence presented at trial and in the motion for new trial:

> *Trial*
>
> [Diaz], Victim's stepfather, continuously sexually abused her from when she was 13 years old until she was 16 years old. The abuse took various forms, including sexual intercourse, and occurred six nights per week. Victim testified at trial that the abuse first occurred "a couple weeks after [her] 13th birthday." She also testified that she was still 13 years old when sexual intercourse occurred for the first time. She further testified that [Diaz] continued to abuse her in the same manner throughout the remainder of her 13th year, and through all of her 14th and 15th years. Victim did not report the abuse to the police. However, [Diaz] confessed to a marriage and family counselor, Kim Mack, who by law was required to report the abuse.
>
> At trial the prosecution called two witnesses and the defense called none. Mack testified both as to what he told Child Protective Services (CPS) after [Diaz] confessed to him and what he remembered about [Diaz's] confession directly. On cross-examination, defense counsel pressed Mack only on his testimony that [Diaz] told him that Victim was "roughly 13 years old" when the abuse began. Specifically, counsel focused on the apparent discrepancy between this testimony and certain information Mack provided on

---

[2] The crime of continuous sexual abuse of a child applies only to children under 14 years of age. CAL. PENAL CODE § 288.5.

the written CPS form. On that form Mack related that the abuse had commenced two to three years earlier. Since Victim was 17 years of age at the time the form was prepared, she would have been older than 13 when the abuse began.

Victim testified as to the nature and timeframe of the abuse. On cross-examination defense counsel tried to raise a doubt as to Victim's age when the abuse commenced. Specifically, counsel asked whether she could "tie the beginning of this to any particular incident . . . ?" Victim could not, but still asserted she was sure she was 13 when the abuse started.

In his closing argument, defense counsel argued that had the abuse occurred when Victim claimed it did, the September 11, 2001 attacks would have occurred during the abuse. Counsel attempted to paint Victim's testimony as unreliable because she did not mention the September 11 attacks in response to his request for a link between the start of the abuse and a major event on cross-examination. The jury, evidently unconvinced, convicted [Diaz] on all counts.

*Motion for New Trial*

Defense counsel and a private investigator met with Victim and her mother after trial to discuss her testimony. At that time counsel walked Victim through the relevant timeframe. Following this interview, Victim signed a declaration stating that she "believe[s][she] was [14] years old when [appellant] began molesting [her]."

[Diaz] based his motion for a new trial on count 1 on this new evidence. Victim testified at the hearing for the motion that on September 11, 2001, she was still a middle school student. However, she recalled that the abuse did not begin until she was in high school. Since Victim was born in August 1988, she would have been 14 years old when she started high school in the fall of 2002. She testified she "could have been 14." The trial judge denied the motion based upon two primary factors: the "new" evidence could have been discovered at trial with reasonable diligence and the testimony was "not . . . particularly credible."

*People v. Diaz*, No. A126544, 2010 WL 3065247, at *1-2 (Cal. Ct. App. Aug. 6, 2010).

The Court of Appeal affirmed Diaz's conviction, finding that the trial court acted within its discretion when it determined that the new evidence could have been discovered at trial by the exercise of reasonable diligence by defense counsel during cross-examination and that the victim's additional testimony was not credible. *Id.* at 1. Diaz petitioned for review in the California Supreme Court, which was summarily denied on November 12, 2010.

Diaz then filed in the superior court a *pro se* habeas petition dated July 25, 2011. In that petition, he argued that: 1) the filing of the information, complaint, and arrest warrant after the

3

statute of limitations had already run violated his ex post facto and due process rights under the state and federal constitutions; and 2) the filing of the complaint 2 years after he had already admitted his criminal conduct violated his right to a speedy trial under the state and federal constitutions. The superior court denied the speedy trial claim as procedurally barred and also denied the statute of limitations and ex post facto claims for failure to state a prima facie case for relief.

Diaz then filed in the Court of Appeal a *pro se* habeas petition alleging that: 1) the application of California Penal Code § 801.1(b)[3] violated the Ex Post Facto Clause of the federal constitution; 2) the filing of the information, complaint, and arrest warrant after the statute of limitations had already run resulted in pre-accusation delay in violation of the state and federal constitutions; and 3) the filing of the complaint 2 years after he had already admitted his criminal conduct violated his due process right to be free of pre-accusation delay and his right to a speedy trial under the state and federal constitutions. The appellate court found the speedy-trial claim procedurally defaulted and also denied the statute of limitations and ex post facto claims for failure to state a prima facie case for relief.

Diaz next filed in the California Supreme Court a habeas petition raising a single claim: the filing of the complaint two years after he had already admitted his criminal conduct violated his federal due process right to be free of pre-accusation delay. On October 10, 2012, the court denied the petition with citation to *In re Dixon*, 264 P.2d 513, 514 (Cal. 1953), which indicates

---

[3] That section provides: "prosecution for a felony offense described in subdivision (c) of Section 290 shall be commenced within 10 years after commission of the offense."

that the state court found it to be barred because it could have been, but was not, raised on direct appeal.

Diaz then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on October 18, 2012, Docket No. 1. *See* 28 U.S.C. § 2244(d)(1)(A). He concurrently filed a motion to stay the federal proceedings to exhaust his state court remedies, Docket No. 3.

Diaz then filed another *pro se* habeas petition in the superior court raising the following claims: 1) statutorily defective arrest warrant in violation of his rights to due process and a fair trial; and 2) ineffective assistance of trial counsel for failing to bring a motion to dismiss based on the defective arrest warrant. The superior court denied the petition as successive and untimely.

Shortly thereafter, Diaz filed in this Court a second motion to stay the federal proceedings to exhaust his state court remedies. Docket No. 7. On September 30, 2013, the Court granted both of Diaz's motions to stay. Docket No. 9.

Diaz filed another *pro se* habeas petition in the California Supreme Court, again alleging that: 1) the arrest warrant was defective; and 2) trial counsel was ineffective for failing to move to dismiss it on those grounds. The court denied the petition with citation to *In re Robbins*, 18 Cal. 4th at 780 (959 P.2d 311 (Cal. 1998)), which indicates that it was denied as untimely.

On February 6, 2014, Diaz filed a first amended petition in this case. Docket No. 10. Because the filing did not include his original claims, the Court allowed him to file an amended petition within 30 days. Docket No. 11. Diaz filed a second amended petition that included both the new and original claims. Docket No. 12. On October 17, 2014, the Court lifted the stay and ordered Respondent to answer the second amended petition. Docket No. 13.

In response, Respondent moved to dismiss Grounds 1 through 3 of the second amended petition. Docket No. 24. This Court, through a previously-assigned magistrate judge, issued Findings and Recommendations recommending that the motion to dismiss be granted, Counts 1-3 dismissed, and Respondent be directed to file a response to the remaining claim (Claim 4). Docket No. 39. Diaz did not object to the Findings and Recommendations, which the Court, through a previously-assigned District Court Judge, adopted in full. Docket No. 40.

Briefing is now complete, and the case has been reassigned to the undersigned judge for adjudication. Also pending before the Court is Diaz's most recent motion to stay the federal proceedings. Docket No. 45. Respondent has opposed the stay request, and Diaz has replied in support. Docket Nos. 47, 48.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Diaz argues that the trial court erred when it denied his motion for a new trial based on the victim's partial recantation.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

6

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication

7

on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Diaz has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

A. Motion to Stay

Diaz moves to have his Petition, which now includes only a fully exhausted claim, stayed and these proceedings held in abeyance while he exhausts additional claims. Diaz argues that good cause exists to stay this action because he will run the risk of forever losing the opportunity for any federal review of new, potentially meritorious claims, and his lack of legal knowledge and learning disability supply the "good cause" and "prejudice" necessary for the California Supreme Court to review the merits of his unexhausted claims.

Although not entirely clear, it appears that Diaz seeks to exhaust his challenge to his arrest warrant which the Clerk of Court executed with a judge's signature stamp rather than by having the judge physically sign it. However, Diaz raised that claim as Ground 1 in his Second

8

Amended Petition (Docket No. 12). As noted above, this Court, through a previously-appointed judge, dismissed that claim as untimely because it did not relate back to the claims in the original petition. Docket No. 40. It therefore appears that Diaz's motion to stay is merely an improper attempt to re-litigate the motion to dismiss already decided by this court.

Moreover, Diaz raised his defective arrest warrant claim to the California Supreme Court in a second petition for habeas relief dated October 8, 2013 (Case No. S214274), which was denied as untimely. The claim is therefore fully exhausted. Diaz thus cannot show that a stay and abeyance is warranted in this case, and his stay request must be denied.

B.   <u>Merits—Erroneous Denial of New Trial Motion (Ground 4)</u>

In the only remaining claim of the operative Petition, Diaz argues that his rights to due process and to a fair trial were violated by the trial court's denial of his new trial motion based on new evidence of the victim's age at the time of the molestations. On direct appeal of his conviction, the Court of Appeal considered and rejected the claim as follows:

> In ruling on an appeal from the denial of a motion for a new trial, we must determine whether the trial court abused its discretion by denying the motion. That determination must be based upon the case's unique factual background. (*People v. Delgado* (1993) 5 Cal.4th 312, 328 (*Delgado*).)
>
> *Diligence*
> After trial, a criminal defendant may move for a new trial on the ground that new, material evidence is discovered that could not have been produced at trial with the exercise of due diligence. (§ 1181, subd. 8.) The trial court considers five factors when it rules on a motion for a new trial: "'"1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. *That the party could not with reasonable diligence have discovered and produced it at trial*; and 5. That these facts be shown by the best evidence of which the case admits.'" [Citation.]" (*Delgado*, *supra*, 5 Cal.4th at p. 328, italics added; *accord*, *People v. Beeler* (1995) 9 Cal.4th 953, 1004.) A trial court abuses its discretion by denying a motion for a new trial if its decision is made "'. . . in an arbitrary, capricious or patently absurd manner that

9

resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124 (*Rodrigues*).)

Quoting *People v. Love* (1959) 51 Cal.2d 751, 756 (*Love*), [Diaz] contends that ". . . there does not appear to be anything that [his] counsel could have done to establish that fact earlier that he did not do." *Love* is inapposite. In *Love*, the testimony "only became available after treatment for alcoholism had improved the witness' memory." (Ibid.) In the instant case there is no evidence Victim suffered from a medical condition during trial which impaired her ability to accurately remember her age at the time of the abuse.

Instead, Victim's memory changed as a result of questions posed to her after trial that could have been posed before or during trial. Posttrial, defense counsel focused Victim on the events of September 11, 2001, and, through this technique, led her to the belief that the abuse began approximately a year after that event. Nothing prevented counsel from asking these same questions at trial, and the trial court acted within its discretion by ruling that doing so would likely have produced the same result.

*Love* is also distinguishable because that court reviewed a decision to grant a new trial. In so doing, the court in *Love* did not hold that as a matter of law the facts before it demanded a new trial, but only that the trial court did not abuse its discretion when it granted the motion for a new trial. (*Love*, *supra*, 51 Cal.2d at p. 758.) We review a decision denying a new trial under the same deferential standard.

*People v. Parrison* (1982) 137 Cal.App.3d 529 (*Parrison*) is closer to our facts. In *Parrison*, the defendant shot a police officer in the neck and fled into a nearby house where he and an accomplice were later arrested. (*Id.* at p. 534.) Following his conviction at trial, the defendant moved for a new trial after a witness offered additional testimony. (*Id.* at p. 541.) However, since the witness offering the additional testimony was always available for questioning, the trial court found that the evidence was not "newly discovered." (*Ibid.*) The Court of Appeal affirmed. (*Ibid.*)

A counsel's failure to ask the specific questions that produce the desired testimony from a witness during cross-examination is not proper grounds for a new trial. Granting a new trial to permit such testimony to be elicited from a second cross-examination would absolve defense counsel of the duty to diligently prepare for trial. (*See, e.g.*, *People v. Green* (1982) 130 Cal.App.3d 1, 10.) Here, the trial court was well within its discretion when it denied [Diaz's] motion for a new trial based upon the new evidence being discoverable with reasonable diligence during trial.

*Credibility*

The trial court found Victim's newly elicited testimony "not to be particularly credible." The court stated it believed the Victim suffered from "buyer's remorse." In effect, the court determined this evidence would not be reasonably likely to have an impact on the outcome of the case on retrial. [Diaz] contends that Victim's posttrial declaration is as credible as her testimony during trial. Specifically, he argues the declaration did not contradict Mack's testimony because "roughly 13" years old could include 14 years old, and the testimony at trial was itself muddled and uncertain. [Diaz]

argues that because of the weakness of the evidence at trial, the new evidence would be likely to produce a reasonable doubt in the minds of the jurors on retrial.

The trial court did not err. The testimony of Mack corroborated Victim's trial testimony that she was 13 at the time the abuse began. Victim testified that she was 13 at the time the abuse began both at the preliminary hearing and at trial. At the hearing on [Diaz's] new trial motion, Victim declined to assert with certainty that she was 14, choosing instead to couch the assertion in language such as "I believe" and "[t]o the best of my recollection." At trial she said, "I'm sure; very sure [that I was 13.]"

The trial court acted within its discretion in determining that the new evidence was not credible. The certainty of the original testimony coupled with the corroboration provided by Mack's testimony provides more than enough evidence to show the trial court's decision was not "arbitrary [or] capricious." (*Rodrigues*, *supra*, 8 Cal.4th 1060, 1124.) Simply because a court could reasonably have ruled differently does not mean it abused its discretion by ruling the way it did. The ruling of the trial court is not to be disturbed unless """a manifest and unmistakable abuse of discretion clearly appears.""" (*Delgado*, *supra*, 5 Cal.4th at p. 328.) Such an abuse of discretion does not exist in the instant case.

*Diaz*, 2010 WL 3065247, at *2-4.

Diaz fares no better on federal habeas review. As an initial matter, Diaz's claim that the trial court erred under California state law in denying his motion for a new trial is not cognizable on federal habeas review. Federal courts may grant a writ of habeas corpus only if the petitioner's conviction or sentence is in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. 62, 67-68 (1991). Diaz cannot transform his otherwise state law claim into a federal one simply by invoking the Due Process Clause. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996). The Ninth Circuit has repeatedly held that a habeas petitioner's mere reference to the Due Process Clause is insufficient to render his claims viable under the Fourteenth Amendment. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *Miller v. Stagner*, 757 F.2d 988, 993–94 (9th Cir. 1985). Because the right that Diaz now seeks to enforce—his statutory right to a new trial—derives from state law, his claim is not cognizable on federal habeas review. *See Washington v. Horel*, No. CV 05-6043, 2008 WL

4427221, at *4 (C.D. Cal. Sept. 30, 2008) (holding that claim of abuse of discretion in denying new trial is not cognizable in federal habeas proceedings).

To the extent that Diaz claims that the new evidence shows that he is actually innocent of the crime of sexual abuse of a child because the victim was 14 when the abuse began, habeas relief is not warranted as to that claim either. The Ninth Circuit has not "resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context." *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). However, the Ninth Circuit has expressly stated that it "assumed that such a claim is viable." *Id.* (citations omitted). This Court therefore assumes, without deciding, that a freestanding actual innocence claim is cognizable on federal habeas review.

Although the Ninth Circuit has not "articulated the precise" standard to establish a "freestanding actual innocence claim," *id.* at 1247, it has called the standard "extraordinarily high," *id.* at 1246 (citations and internal quotation marks omitted). "[A]t a minimum, the petitioner must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Id.* (citations and internal quotation marks omitted). Indeed, both the Supreme Court and the Ninth Circuit have rejected freestanding actual innocence claims in the face of compelling new evidence where the new evidence did not "'conclusive[ly] exonerat[e]'" the petitioner or "'preclude any possibility of [the petitioner's] guilt.'" *Id.* at 1247-48 (quoting *House v. Bell*, 547 U.S. 518, 555 (2006) and *Carriger v. Stewart*, 132 F.3d 463, 477 (9th Cir. 1997)).

Diaz claims that newly discovered evidence, the victim's declaration that she later believed she was 14 when the offenses began, establishes his actual innocence with respect to the

12

continuous sexual abuse of a child under 14 conviction. Where a habeas petitioner seeks to rely on new evidence to prove actual innocence, the new evidence "must be reliable." *Id.* at 1247 (citation omitted). In determining the evidence's reliability, the reviewing court "may consider" the "timing of the submission" and the "likely credibility" of an affiant. *Id.* (citation and internal quotation marks omitted). The court must then consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* (citation and internal quotation marks omitted). Based on this "total record," the court must decide whether the petitioner has demonstrated actual innocence. *Id.* (citations and internal quotation marks omitted).

Here, the state court determined that the victim's declaration was not credible after holding an evidentiary hearing in which the victim and her mother testified. This Court must defer to the state court's finding that the new evidence was not credible unless Diaz rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340 ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.").

Diaz fails to satisfy this heavy burden. "[N]o sort of factual finding[] is more appropriate for deferential treatment than . . . a state court's credibility determination." *Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986). "'Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Id.* (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

In sum, considering "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial," *Jones*, 763 F.3d at 1247, this Court concludes that the total record does not satisfy the "extraordinarily high" standard for establishing actual innocence with respect to his challenged conviction, *id.* at 1246. The Ninth Circuit's ruling in *Jones v. Taylor* further compels this result. In that case, the Ninth Circuit reversed the district court's grant of habeas relief to a petitioner which had been based on the recantation of the three trial witnesses, including the victim. *Id.* at 1251. In holding that the petitioner failed to establish his actual innocence, the Court stated, "The most that can be said of the new testimony is that it undercuts the evidence presented at trial. Evidence that merely casts doubt on the petitioner's guilt, but does not affirmatively prove innocence, is insufficient to merit relief on a freestanding claim of actual innocence." *Id.* The same is true here. Diaz is therefore not entitled to relief.

## V. CONCLUSION AND ORDER

Diaz is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion to Stay at Docket No. 45 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 27, 2017.

                                              /s/James K. Singleton, Jr.
                                              JAMES K. SINGLETON, JR.
                                              Senior United States District Judge